NO. 14-15760

# In the United States Court of Appeals for the Ninth Circuit

JAMES S. HERBERT, et al.

*Plaintiffs-Appellants*,

v.

FISHER SCIENTIFIC COMPANY, L.L.C., et al.,

*Defendant-Appellee.*

**On Appeal from the United States District Court for Hawai`i, Honolulu No. 1:13-cv-00452 DKW/BMK The Honorable Derrick K. Watson**

## OPENING BRIEF OF PLAINTIFFS-APPELLANTS

GARY O. GALIHER
L. RICHARD DEROBERTIS
ALYSSA R. SEGAWA
GALIHER DEROBERTIS WAXMAN
610 Ward Avenue
Honolulu, Hawai`i 96814
Tel. No. 808-597-1400

*Attorneys for Plaintiffs-Appellants*

Case No: 14-15760

# UNITED STATES

# C O U R T   O F   A P P E A L S

## FOR THE NINTH CIRCUIT

JAMES R. S. HERBERT and
BARBARA ELLIS,

        Plaintiffs-Appellants,

    vs.

FISHER SCIENTIFIC
COMPANY L.L.C., et al.,

        Defendants-Appellees.

DC No. CV 13-00452
*Cons. with* CV 13-00705

**OPENING BRIEF OF
PLAINTIFFS-APPELLANTS**

i

# TABLE OF CONTENTS

I.   JURISDICTIONAL STATEMENT ...............................................................II

II.  STATEMENT OF THE ISSUES PRESENTED ...........................................1

III. CONCISE STATEMENT OF THE CASE ...................................................1

IV.  STATEMENT OF FACTS ...........................................................................3

V.   SUMMARY OF THE ARGUMENT ..........................................................10

VI.  STANDARD OF REVIEW.........................................................................14

VII. ARGUMENT...............................................................................................15

    A.   The Standard for Forum Non Conveniens. ........................................15

    B.   The District Court's ruling on the private interest factors was not
        based on facts in the record. ...............................................................17

        1.   Defendants put forth NO evidence that documents still exist in
               Indonesia. ................................................................................18

        2.   Defendants put forth NO evidence that witnesses were located
               in Indonesia. ............................................................................22

    C.   The District Court abused its discretion in evaluating the public
        interest factors. ...................................................................................28

        1.   The District Court erroneously determined that Indonesia had a
               greater interest in this action. ..................................................29

        2.   The District Court's erroneous determination that Indonesia has
               a greater interest caused it to also incorrectly evaluate the
               remaining public interest factors................................................30

    D.   The District Court abused its discretion when it did not afford
        appropriate deference to Plaintiffs' choice of forum. .........................33

    E.   The District Court did not strike a reasonable balance of the factors.35

VIII. CONCLUSION.............................................................................................37

# TABLE OF AUTHORITIES

## Cases

*Boston Telecommunications Group, Inc. v. Wood*,
588 F.3d 1201 (9th Cir. 2009) ................................... 13, 21, 24, 25, 28, 34, 36

*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011) ............... 13, 14, 15, 20, 21, 27, 33, 34, 36, 37

*Cheng v. Boeing Co.*,
708 F.2d 1406 (9th Cir. 1983) ............................................................ 18, 35

*Dole Food Co. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) ...................................................... 17, 18

*Engleson v. Burlington Northern R. Co.*,
972 F.2d 1038 (9th Cir. 1992) ....................................................................15

*Gates v. Learjet Corp. v. Jensen*,
743 F.2d 1325 (9th Cir. 1984) .....................................................................12

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947)......................................................................................16

*Kailieha v. Hayes*,
56 Haw. 306 (1975) ......................................................................................29

*Koster v. (American) Lumbermens Mut. Cas. Co.*,
330 U.S. 518 (1947)....................................................................... 15, 16, 36

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137 (9th Cir. 2001) ................................................ 16, 17, 28, 29

*Neelon v. Bharti*,
2014 WL 7336404 (9th Cir. Dec. 29, 2014)........................ 13, 20, 26, 34, 37

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981).............................................. 10, 14, 16, 22, 25, 33, 36

iii

*Ravelo Monegro v. Rosa*,
   211 F.3d 509 (9th Cir. 2000) .................................... 10, 13, 15, 17, 25, 26, 36

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006) ........................................ 10, 16, 17, 21, 32, 34

## I.  JURISDICTIONAL STATEMENT

This case was originally filed in Hawai'i State Court and was subsequently removed to the United States District Court of the District of Hawai'i pursuant to 28 U.S.C. §§ 1441(1) and 1446(b).  (EOR Vol. 3, Tab 22 & 23)  The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332 as Mr. Herbert and Defendants are citizens of different States.

The order granting Defendant Fisher Scientific Company LLC's Motion to Dismiss First Amended Complaint on the Grounds of Forum Non Conveniens (and joinder by Defendant-Appellee VWR International, LLC) was granted on April 14, 2014.  (EOR Vol. 1, Tab 2)  Final Judgment in favor of Defendants was entered on April 18, 2014 and the case was subsequently closed.  (EOR Vol. 1, Tab 1)  James R. S. Herbert filed his Notice of Appeal on April 21, 2014.  (EOR Vol. 2, Tab 3)

## II.  STATEMENT OF THE ISSUES PRESENTED

Whether a District Court abused its discretion by dismissing a case filed by a United States resident and his United States citizen wife in his home state against U.S. corporations on the doctrine of forum non conveniens and ordering trial take place in Jakarta, Indonesia based upon unsubstantiated statements regarding possible evidence by defense counsel.

## III.  CONCISE STATEMENT OF THE CASE

Herbert filed his Complaint in Hawai'i State Court on August 12, 2013, naming only Fisher Scientific LLC, incorrectly named as Thermo Fisher Scientific

Inc. ("Fisher"). (EOR Vol. 3, Tab 23) Fisher removed this case on September 6, 2013 to the United States District Court for the District of Hawai'i. (EOR Vol. 3, Tab 22) On that same day, Fisher filed its first Motion to Dismiss on the Grounds of *Forum Non Conveniens*. On November 15, 2013, Herbert filed a Motion for Leave to File First Amended Complaint to add VWR International, LLC, successor in interest to Sargent-Welch Scientific Company ("Sargent-Welch") as an additional defendant. On December 9, 2013, Herbert filed another Complaint in Hawai'i State Court again naming both Fisher and Sargent-Welch. On December 20, 2013, Fisher removed the second case to the United States District Court for the District of Hawai'i. (EOR Vol. 3, Tab 21)

On January 17, 2014, Herbert's Motion for Leave to File First Amended Complaint was granted and the two actions were consolidated. [ROA Docket No. 38] Herbert filed his First Amended Complaint on January 17, 2014. (EOR Vol. 3, Tab 20) On January 22, 2014, Fisher filed its Motion to Dismiss First Amended Complaint on the Grounds of *Forum Non Conveniens*. (EOR Vol. 3, Tab 17) On January 27, 2014, Sargent-Welch joined in Fisher's Motion to Dismiss. (EOR Vol. 2, Tab 16) On April 14, 2014, the District Court granted Fisher's Motion and Sargent-Welch's joinder, holding the claims of two Hawaii residents against two U.S. corporations should be filed in Jakarta. (EOR Vol. 1, Tab. 2)

After Plaintiffs filed this appeal, the parties entered into the Ninth Circuit mediation program. Fisher and Plaintiffs reached a settlement and on August 6, 2014, the appeal was temporarily remanded to the Hawaii District Court for determination of Good Faith Settlement under Hawaii law. [Docket No. 20] On October 9, 2014, Magistrate Judge Barry M. Kurren issued Findings and Recommendation to Grant Defendant Fisher's Petition for Good Faith Settlement and on October 28, 2014, District Judge Derrick K. Watson adopted the Magistrate's Findings and Recommendations. Plaintiffs/Appellants moved to reinstate this appeal on November 6, 2014. [Docket No. 21] Reinstatement was granted on November 26, 2014. [Docket No. 22] The only remaining Defendant-Appellee is Sargent-Welch.

## IV.  STATEMENT OF FACTS

Mr. Herbert has been a Permanent Resident of the United States for over ten years, residing, working, and raising his family in Hawaii since 2003. (EOR Vol. 2, Tab 12, at ¶ 18) Born in Rochdale, United Kingdom, Mr. Herbert married Barbara Ellis, a United States citizen, on May 23, 1993. (*Id.* at ¶ 3, 4) They had a son, Jon Herbert, on November 15, 1993 and together they moved to Honolulu, Hawaii in 2003. (*Id.* at ¶ 5, 18) Jon Herbert is also a U.S. citizen through Barbara's United States citizenship. (*Id.* at ¶ 18) On June 22, 2003, over ten years ago, Mr. Herbert became a permanent resident of the United States and in August

that same year, 2003, he began teaching Chemistry at Punahou School in Honolulu, Hawaii. (*Id.* at ¶ 19, 20)

Mr. Herbert is a chemistry teacher. He first taught Chemistry at the Northwood School in Hillingdon, London from 1979 until 1981. (*Id.* at ¶ 6) He then taught Chemistry at the American School in Switzerland ("TASIS"), located in Athens, Greece from 1981 to 1983. (*Id.* at ¶ 7) At TASIS in Athens, Greece, Mr. Herbert would order asbestos-containing chemistry supplies, including asbestos mats and squares for Bunsen Burners, asbestos-centered wire gauze, asbestos gloves, and asbestos wool, from Phillip Harris and Sargent-Welch. (EOR Vol. 2, Tab 15, at 17-18) While in Athens, Mr. Herbert would personally order asbestos-containing supplies directly from Defendant-Appellee Sargent-Welch. (EOR Vol. 2, Tab 12 at ¶ 10-13)

Mr. Herbert then began teaching Chemistry at the Jakarta International School ("JIS"), located in Jakarta, Indonesia in 1983. (*Id.* at ¶ 8) Although Mr. Herbert taught at JIS until 1998, he recalls that asbestos products were no longer available for sale in the late 1980s. (*Id.* at ¶ 8, 15) Thus, he was only exposed to asbestos products for a few years in Jakarta in the mid-1980s, i.e. 1983 to 1987. All classes at JIS were taught in English. (*Id.* at ¶ 9) Mr. Herbert would personally order chemistry supplies directly from manufacturers such as Defendants Sargent-Welch and Fisher Scientific when he taught in both Athens,

Greece and Jakarta, Indonesia. (*Id.* at ¶ 10) He recalls personally going through the sales catalogs for Fisher and Sargent-Welch in order to select the chemistry lab supplies he would need for teaching in both Athens, Greece and Jakarta, Indonesia, which again included asbestos mats and squares for Bunsen Burners, asbestos-centered wire gauze, asbestos gloves, and asbestos wool. (*Id.* at ¶ 12; EOR Vol. 2, Tab 15, at 17-18) He would also personally fill out the purchase order forms to send to Sargent-Welch and Fisher. (EOR Vol. 2, Tab 12 at ¶ 13)

Mr. Herbert has lived and worked in Honolulu, Hawaii for the past twelve years and is currently employed by Punahou School as a Chemistry teacher. (*Id.* at ¶ 20) On October 7, 2013, Mr. Herbert's permanent resident status was renewed. (*Id.* at ¶ 21)

In January of 2011, Mr. Herbert began to experience shortness of breath. (*Id.* at ¶ 22) His family doctor, David McEwan, MD, who is located in Honolulu, determined that Mr. Herbert had fluid in his left lung. (*Id.* at ¶ 23) Mr. Herbert's doctors conducted testing, but could not determine the source of the fluid until he was hospitalized from July 16, to July 20, 2012 at Straub Clinic and Hospital in Honolulu, Hawaii for diagnostic testing and to drain the fluid. (*Id.* at ¶ 24) On July 20, 2012, Mr. Herbert was diagnosed with Malignant Mesothelioma of the pleura by Dr. Mark Grattan at Straub Clinic and Hospital in Honolulu, Hawaii. (*Id.* at ¶ 24) Following his diagnosis, Mr. Herbert has continuously seen Dr. Elaine

Imoto at Straub Clinic and Hospital and Dr. Jonathon Cho at the Queens Medical Center, both of which are located in Honolulu, Hawaii, for treatment and chemotherapy. (*Id.* at ¶ 25)

From March 21 to March 31, 2013, Mr. Herbert was hospitalized at Brigham & Woman's Hospital in Boston, Massachusetts as he underwent an extrapleural pneumonectomy (EPP) surgery, which is an extensive operation to remove the pleura lining the chest wall, part of the diaphragm, the lining around the heart, lymph nodes, and the entire lung on the side of the tumor. (*Id.* at ¶ 26) Since his surgery, Mr. Herbert continues to see Dr. Cho at the Queens Medical Center in Honolulu at least once a month to follow up on his surgery and to monitor the activity of his cancer. (*Id.* at ¶ 28)

In support of the Motion to Dismiss, Fisher attached only two exhibits: (1) a declaration of "expert witness" Harjanto Trijono purporting to describe the Indonesian Court system and (2) a printout of the United States District Court of Hawaii's Judicial Caseload Profile. (EOR Vol. 3, Tab 18 & 19) Attached to Fisher's Reply Memorandum was a declaration of Mr. Herbert, a printout of the Department of State, and a printout of the Jakarta International School website. (EOR Vol. 2, Tab 8-10) As a supplemental declaration to its Reply Memorandum, Fisher attached Plaintiffs' Response to Defendant Fisher Scientific Company L.L.C.'s First Set of Requests for Production to Plaintiffs. (EOR Vol. 2, Tab 6)

None of these exhibits demonstrated that any documents or witnesses are located in Indonesia. Therefore, Fisher did not attach any exhibits and provided no evidence regarding the nature or extent of evidence relevant to this case that currently existed in Indonesia.

Similarly, in support of its Joinder in Defendant Fisher Scientific Company LLC.'s Motion to Dismiss First Amended Complaint on the Grounds of *Forum Non Conveniens*, Filed 1/22/2014, Sargent-Welch did not attach a single exhibit or document. (EOR Vol. 2, Tab 16)

By contrast, in support of his Memorandum in Opposition, filed on February 14, 2014, Herbert attached a number of exhibits demonstrating the lack of evidence located in Indonesia, which included the declaration of James R.S. Herbert, a printout of the Jakarta International School's Website, a printout of the United States Department of State website, and an excerpt of Plaintiffs' Answers to the Master Set of Interrogatories Propounded by Defendants. (EOR Vol. 2, Tab 12-15) In his Declaration, Mr. Herbert states that he worked at the Jakarta International School (JIS) located in Jakarta, Indonesia from 1983 to 1998. (EOR Vol. 2, Tab 12, at ¶ 8) He also states that at JIS, all classes were taught in English and that he would personally go through the catalogs, select, and order the scientific equipment products from Fisher, Sargent-Welch, and Frey Scientific. (*Id.* at ¶ 9) He also states that he believed the asbestos items were no longer for

sale by the late 1980s, and that in the previous year, the science building that he taught in at JIS was demolished and rebuilt. (*Id.* at ¶ 15 & 16)

The printout of the Jakarta International School's website demonstrates that faculty members at JIS on average stay for only seven years. (EOR Vol. 2, Tab 13) The printout of the United States Department of State website details the means by which service and depositions may be conducted. (EOR Vol. 2, Tab 14) Lastly, Herbert's Answers to Interrogatories states that he only worked in one building during his tenure at JIS and that building, as mentioned above, was completely torn down and rebuilt within the past few years. (EOR Vol. 2, Tab 15, at 19) He also states that the asbestos products he would order were no longer available for ordering sometime in the late 1980s. (*Id.*) Mr. Herbert listed two supervisors and one coworker with whom he worked with at JIS. (*Id.* at 19-20) He states that his coworker now lives in Madrid, Spain. (*Id.* at 20) There is no information provided regarding the current whereabouts of his two supervisors.

At the hearing on the Motion to Dismiss, when the District Court questioned which witnesses located in Indonesia are unwilling to testify to thus justify a dismissal for forum non conveniens, Fisher's counsel admitted "**we don't know** and **we won't know** until the case is in Indonesia **who those witnesses are**." (EOR Vol. 2, Tab 4, at 5:16—6:4) Fisher's counsel then stated without any supporting facts that "it is difficult to assess here because **I can't give you a**

**number of how many witnesses and their names and what particularly they're going to say**. … But I still think it's compelling because **I know they're there**…." (*Id.* at 21:5—10)  Thus, the only statement of "evidence" located in Indonesia relevant to this action to justify dismissal on forum non conveniens grounds was the unsubstantiated subjective belief of Fisher's counsel that somehow he "know[s] they're there."

When the District Court inquired as to what documents Defendants possessed regarding their products' sales to Indonesia, counsel for Fisher stated "We don't have records of any sales of any asbestos containing products due to our record retention policy." (*Id.* at 45:15-17)  Counsel for Sargent-Welch similarly stated "It's correct that we do not have records relating to these sites." (*Id.* at 47:14-15)  Thus, both Defendants admitted that they did not retain records of their own sales to Indonesia from 25 to 30 years ago, but still argued without any support that such records would be available in Indonesia.  That is, defendants argued that a high school in Jakarta would keep records of its chemistry lab supply purchases for 30 years when they as manufacturers did not retain their own sales records from the 1980s.

Relying on this speculation of "Indonesian evidence" by defense counsel, the District Court granted Fisher's Motion to Dismiss and Sargent-Welch's joinder on April 14, 2014, holding the case should be re-filed in Jakarta, Indonesia.

Despite no evidence of any documents or witnesses to events 30 years ago still being in Jakarta, Judge Watson found that "significant relevant evidence and witnesses remain in Indonesia beyond the Court's power to compel[.]" (EOR Vol. 1, Tab 2, at 21) In fact, the only "witnesses" identified live in Hawaii (Mr. Herbert) and Madrid, Spain (Joanne Reykdal), and no documents were identified as being in Indonesia.

## V. SUMMARY OF THE ARGUMENT

The doctrine of forum non conveniens was developed to protect defendants from plaintiffs who choose a forum that is oppressive and vexatious to the defendant, thus giving the plaintiff an unfair advantage. Here, that principle of using the doctrine as a shield was transformed into a sword by allowing multinational corporate defendants to choose a forum that was oppressive and vexatious to the plaintiff. The doctrine of *forum non conveniens* is "an **exceptional tool** to be employed **sparingly**." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000) (emphasis added). Moreover, "a plaintiff's choice of forum is entitled to **greater deference** when the plaintiff has chosen the home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)(emphasis added). Thus, if the balance of private and public factors does not "**strongly favor** dismissal," the Plaintiff's choice of forum should not be disturbed. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1180 (9th Cir. 2006) (emphasis added)

(internal quotation marks omitted). A resident of Hawaii who is dying of malignant mesothelioma should not be forced to file suit in a foreign country, where English is not even spoken in its courts, especially when the Hawaii resident is suing U.S. corporations that do international business and in the Plaintiff's home state.

 The only facts that were established in the record are:

1. Plaintiff James Herbert is a permanent resident of the United States residing in Honolulu, Hawai'i.

2. Plaintiff Barbara Ellis, Herbert's wife, is a United States citizen and also resides in Honolulu, Hawai'i. They live with their son, Jon Herbert who is also a United States citizen.

3. Herbert was diagnosed with malignant mesothelioma in Hawai'i and is currently being treated in Hawai'i.

4. Herbert received extensive surgery to treat his mesothelioma in Boston, Massachusetts.

5. Defendant Fisher Scientific (now settled), a United States corporation, incorporated in the State of Delaware with its principal place of business in the State of Pennsylvania, sold asbestos-containing chemistry supplies for high schools internationally and in the United States.

6.      Defendant VWR International (the only remaining defendant and only remaining appellee), a United States corporation, incorporated in the State of Delaware with its principal place of business in the State of Pennsylvania, is being sued as the successor of Sargent-Welch. Sargent-Welch sold high school chemistry supplies including asbestos products to Athens, Greece and Jakarta, Indonesia when Mr. Herbert worked in the same.

7.      There is no basis to believe JIS has kept records of its high school chemistry lab purchases from 1983 to 1985.

8.      Defendants Fisher and Sargent-Welch admitted they kept none of their own sales records from the 1980s. Thus, it defies logic to believe that even though corporations fail to keep sales records from 30 years ago, a high school in Jakarta would keep records of the purchases of chemistry lab supplies from 30 years ago.

The Ninth Circuit repeatedly reverses a dismissal for forum non conveniens when the balance of factors does not **strongly** favor dismissal. *Gates v. Learjet Corp. v. Jensen*, 743 F.2d 1325 (9th Cir. 1984) (reversed grant of dismissal because the District Court did not give appropriate weight to a resident's choice of home forum, the facts did not support the finding that the majority of witnesses were found in the Philippines, the court did not examine the materiality of the

witnesses' proposed testimony, the court erroneously concluded that the Philippines had a greater interest, and the court improperly used the dismissal to alleviate court congestion); *Ravelo Monegro v. Rosa*, 211 F.3d 509 (9th Cir. 2000) (reversed grant of dismissal in part because there was no evidence to support District Court's finding that access to proof would be easier in the Domincan Republic); *Boston Telecommunications Group, Inc. v. Wood*, 588 F.3d 1201 (9th Cir. 2009) (reversed grant of dismissal because court did not afford proper deference to a U.S. plaintiff, found the witness factor neutral when the defendant provided very little information regarding the potential witnesses, and erroneously found that the forum state has no identifiable interest in the action); *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (9th Cir. 2011) (reversed grant of dismissal because there was no evidence to support District Court's finding that unwilling witnesses and pertinent physical evidence were located in Peru, and undervaluing the local state's interest in the outcome); *Neelon v. Bharti*, 2014 WL 7336404 (9th Cir. Dec. 29, 2014) (reversed dismissal because the court failed to consider the residence of the parties, the convenience to litigants, focused solely on the location of witnesses and not their materiality, "found" documentary evidence located in another country when there was no evidence where there was no evidence to support such a finding, and failed to hold the moving party to its burden.)

The District Court herein abused its discretion by not basing its decision on facts in the record, but rather relied on the unsupported speculation of counsel. By relying on Fisher's counsel's unsupported speculation that he "knows" there still are witnesses in Jakarta 30 years later, the Court found that two of the private interest factors, (i.e. access to evidence and witnesses), weighed in favor of dismissal. The District Court also improperly ignored the advantages of a Hawaii forum in weighing the public interest factors. Furthermore, the Court did not give the appropriate greater deference that is owed to a Plaintiff who chooses his home forum and did not strike a reasonable balance of the factors.

## VI.  STANDARD OF REVIEW

The Ninth Circuit "review[s] the district court's order dismissing the lawsuit on the basis of *forum non conveniens* for an abuse of discretion." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)). "A district court abuses its discretion by identifying an incorrect legal standard, or by applying the correct standard illogically, implausibly, or in a manner **without support in inferences that may be drawn from facts in the record**." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).

The Ninth Circuit has also held that "[a] district court abuses its discretion if it does not apply the correct law, **rests its decision on a clearly erroneous finding**

**of a material fact**, or applies the correct legal standard in a manner that results in an abuse of discretion." *Engleson v. Burlington Northern R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992). Similarly, "[i]n the *forum non conveniens* context, a district court may abuse its discretion by relying on an erroneous view of the law, by **relying on a clearly erroneous assessment of the evidence**, or by striking an unreasonable balance of relevant factors." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).

## VII. ARGUMENT

### A. The Standard for Forum Non Conveniens.

The doctrine of *forum non conveniens* is "an **exceptional** tool to be employed **sparingly**," and thus cannot be decided on mere speculation alone. *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000) (emphasis added). The U.S. Supreme Court has stated:

> [A plaintiff] should not be deprived of the presumed advantages of his home jurisdiction except upon a **clear** showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be **out of all proportion** to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.

*Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) (emphasis added).

"Even when an adequate alternative forum exists, we will not disturb the plaintiff's original choice of forum 'unless the "private interest" and the "public interest" factors **strongly** favor' dismissal." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1180 (9th Cir. 2006) (quoting *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1146 (9th Cir. 2001) (emphasis added)). This is even more so when the plaintiff has chosen his home forum.

The U.S. Supreme Court has held "a plaintiff's choice of forum is entitled to **greater deference** when the plaintiff has chosen the home forum. When the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981) (emphasis added). Furthermore, "[i]n any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." *Koster*, 330 U.S. at 524. As a result, "unless the balance is **strongly** in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (emphasis added). Thus under Supreme Court precedent, Mr. Herbert's choice of his home forum required greater deference than what the District Court gave.

The Ninth Circuit has held "a plaintiff need not select the optimal forum for his claim, but only a forum that is not so oppressive and vexatious to the defendant,

'as to be out of proportion to plaintiff's convenience.'" *Tuazon*, 433 F.3d at 1180 (quoting *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000)). Moreover, a defendant who moves for dismissal on *forum non conveniens* "bears the burden of showing…that the balance of private and public interest factors favor dismissal." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (citing *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142-43 (9th Cir. 2001)). Thus, Defendants were only entitled to dismissal if they met their burden of proving the balance of both private and public factors **strongly favored** Indonesia as the most convenient forum.

## B. The District Court's ruling on the private interest factors was not based on facts in the record.

The private factors that must weigh strongly in favor of dismissal were identified as:

(1) the residence of the parties and the witnesses;
(2) the forum's convenience to the litigants;
(3) access to physical evidence and other sources of proof;
(4) whether unwilling witnesses can be compelled to testify;
(5) the cost of bringing witnesses to trial;
(6) the enforceability of the judgment; and
(7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001).

The only private interest factors that the District Court found weighed in favor of dismissal were access to evidence and source of proof and witnesses. The

District Court's findings with respect to these two factors were not based on facts in the record, but rather unsupported argument and speculation by Defendants' counsel.

>    1.    Defendants put forth NO evidence that documents
>          still exist in Indonesia.

The Ninth Circuit held that "the standard to be applied to a motion for dismissal on the ground of *forum non conveniens* is whether … **defendants** have made a **clear showing of facts** which … establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (quoting *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983)) (emphasis added). Contrary to the District Court's holding, Defendants did not make a clear showing of fact, instead they presented unsupported argument and speculation.

Defendants proffered no facts that physical evidence was located in Indonesia. Fisher's Motion and Sargent-Welch's joinder was based on pure speculation with no supporting evidence. (EOR Vol. 3, Tab 17, at 22). There is nothing in the record to even infer that physical evidence still exists in Indonesia. The District Court stated that:

>    Defendants contend that there are product identification
>    and alternative asbestos exposure documents, products
>    and facilities at the Jakarta International School,

> including: purchases[sic] orders, invoices and product catalogs; records regarding the location of former co-workers; and records relating to possible alternative exposure. They also point to the need for site inspection of school facilities and Plaintiffs' residences.

(EOR Vol. 1, Tab 2, at 16-17). The District Court, however, could point to no facts to support the Defendants' contention that these documents or sites existed, because none were proffered.

By contrast, Plaintiffs submitted evidence which refuted Defendants' baseless contentions. First, Herbert's Answers to the Master Set of Interrogatories demonstrated that a site inspection of Herbert's work site was not possible because he worked in only one building during his entire tenure at JIS and that building had been completely demolished within the previous year or so. (EOR Vol. 2, Tab 15, at 19) Herbert reaffirmed this fact in his signed declaration stating that the science building in which he had taught had been demolished and rebuilt. (Vol. 2, Tab 12, at ¶ 16)

Moreover, both Fisher and Sargent-Welch claim that they retained no records of any sales of asbestos-containing products. (EOR Vol. 2, Tab 4 at 45:14-17, 47:14-15) However, Defendants again asserted without any factual basis or support that JIS, an international school, would retain sales records of asbestos-containing chemistry lab supplies that were purchased over 25 years ago. Again,

mere argument by counsel cannot be taken as a factual basis on which a court can base its determination to dismiss a case over which it has jurisdiction.

The Ninth Circuit has recently addressed a similar issue where a defendant claimed it needed access to sources of proof found in another country. In *Neelon v. Bharti*, the Ninth Circuit stated "the district court's determination that 'most documentary evidence will have to be collected and shipped from' Canada or Mongolia is not supported by any evidence in the record. Defendants provided no evidence to the district court regarding the location of any documentary evidence." *Neelon*, 2014 WL 7336404, *2 (9th Cir. Dec. 29, 2014). As a result, the Ninth Circuit found that "the district court abused its discretion in weighing the evidence." *Id*.

In *Carijano*, the Plaintiffs sued for injuries sustained as a result of the pollution by the defendants into the waterways along the river in Peru. 643 F.3d at 1222—23. The defendants withdrew from the site in 2000 and the Plaintiffs brought suit in 2007. In addressing the claims by the defendants, the Ninth Circuit held,

> As far as physical evidence and other sources of proof, the district court failed to consider during the discussion of the private interest factors Occidental's transfer of Block 1-AM to Pluspetrol. That Occidental withdrew from the site in 2000 undermines its argument that evidence found today at the physical site is much more critical to the litigation than evidence associated with

> Occidental's corporate headquarters, which has been in
> Los Angeles throughout the relevant period.

*Carijano*, 643 F.3d at 1231.

Similarly, the facts of the present case are unique in that the tortious conduct of selling and exposing Mr. Herbert to asbestos-containing products without warning occurred more than 25 years ago. The long lapse in time from when the last asbestos containing product was sold to Indonesia to the present day makes it far less likely that documents would be found in Indonesia. Moreover, the Defendant-Appellees admit that they do not keep their own sales records, but they speculate that a high school would keep records on chemistry lab supplies for 30 years. Consequently, the lack of evidence to support its contention undermines the defendants' argument that the most critical evidence is located in Jakarta. The Ninth Circuit has held that "'[a]ny court…will necessarily face some difficult in securing evidence from abroad,' but these complications do not necessarily justify dismissal." *Boston Telecommunications Group, Inc. v. Wood*, 588 F.3d 1201, 1208 (9th Cir. 2009) (quoting *Tuazon*, 433 F.3d at 1181). The District Court abused its discretion in holding this factor weighed in favor of dismissal because it based its decision "on a clearly erroneous assessment of the evidence." *Carijano*, 643 F.3d at 1224.

>          2.      Defendants put forth NO evidence that witnesses
>                  were located in Indonesia.

Defendants argued without any supporting facts that all third party witnesses are located in Indonesia.  (EOR Vol. 3, Tab 17, at 22)  The District Court found that even though the "Defendants have not identified by name the witnesses presently located in Indonesia, the Court agrees that the testimony of Indonesian witnesses, including product identification witnesses, Herbert's former co-workers, school witnesses with knowledge of the purchase of asbestos-containing products, and witnesses to potential alternative exposure are material to this case."  (EOR Vol. 1, Tab 2, at 22 (internal footnote omitted)).  However, again the District Court can point to no facts that support this contention besides the bare speculation put forth by Fisher.

The District Court stated that "Defendants have provided 'enough information to enable the District Court to balance the parties' interest.'"  Order at 22, n. 2 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981)).  However, again the District Court identifies no actual facts provided to the District Court by Fisher or Sargent-Welch.  Fisher purely speculated as to the type of witnesses it imagines are found in Indonesia without any investigation or support for such assertions.

Contrary to the zero facts put forth by Defendants, Plaintiffs have actually proffered numerous facts demonstrating that the material witnesses are not located

in Indonesia. First the most important and material witness to this case is Mr. Herbert himself. Mr. Herbert alone can testify to his purchase of asbestos-containing products, his use of such products, the details of his workplace, the extent of time he was exposed, and alternative exposures. Mr. Herbert's answers to interrogatories demonstrate that he worked with the asbestos products himself or with the class. For instance, Mr. Herbert describes his work at JIS as follows: "I would do a demonstration for the students, or the students would do a laboratory experiment that I would supervise and assist." (EOR Vol. 2, Tab 15, at 19). There is no evidence to suggest that co-workers were there observing him work, thus his own testimony is the most material to his case.

Similarly, he identified two supervisors and one coworker from Indonesia. It is unknown where the supervisors are and the one co-worker now lives in Spain, not Indonesia. Additionally, there is no evidence that any supervisor or co-worker had ever observed Mr. Herbert working with asbestos materials. Another piece of evidence that was before the District Court was a printout from the Jakarta International School's website. This printout evidenced the fact that "Faculty members stay at JIS for an average of seven years." (EOR Vol. 2, Tab 13). Additionally, Mr. Herbert stated in both his answers to interrogatories and his declaration that asbestos products were no longer for sale by the late 1980s. As a result, any coworker that might have had any knowledge as to the asbestos

products Mr. Herbert worked with would have had to have worked at JIS from at least the early 1980s. Mr. Herbert started working in Indonesia in 1983. Thus, it has been 31 years since he began and **over** 25 years since Mr. Herbert last worked with an asbestos product at JIS. The faculty normally stay only 7 years, thus it is not reasonable to assume that any faculty from Mr. Herbert's time at JIS are still currently in Jakarta. Nor is it reasonable to assume any faculty were witness to chemistry lab purchases from 1983, or would even remember it. In response to Mr. Herbert's evidence, the defendants put forth no evidence that any coworker from Mr. Herbert's time at JIS still resides in Indonesia. Therefore, the District Court's inference that any third party witness with material testimony is located in Indonesia is not supported by any facts in the record and is clearly an erroneous finding of material fact constituting an abuse of discretion.

The Ninth Circuit has reversed grants of dismissal for forum non conveniens where the district court has "found" a material fact where there was no evidence to support such a finding. In *Boston Telecommunications*, the Ninth Circuit found that the defendant seeking a forum non conveniens dismissal:

> …argued, in conclusory fashion, that the various Slovakia or Europe-based witnesses "worked with and under him … on the professional engagements for [GCS]," "understood the relationship between him and Marshall," and "could help defend his professional, reputation for honesty, and character," without explaining who these witnesses were or what information each would have. [The defendant's] declaration in

> support of the 2003 motion to dismiss on forum non
> conveniens grounds speaks to the witnesses "*identified by
> plaintiffs* in *their* Initial Disclosures … and information
> that *plaintiffs* allege the witnesses possess," but sheds no
> further light on the relative importance of various
> witnesses to his defense. Similarly, [the defendant's]
> supplemental disclosures, filed in April 2008, listed
> witnesses with a general statement that they were
> "expected to have relevant knowledge and information"
> regarding a long list of topics, but these disclosures failed
> to specify which witnesses would testify as to each topic.

*Boston Telecommunications*, 588 F.3d at 1209-1210 (emphasis added by court).

In looking at the defendant's "conclusory" assertions, the Ninth Circuit held that "the district court abused its discretion in holding that this private interest factor was neutral when [the defendant] provided very little information that would have enabled the district court to understand why various witnesses were material to his defense." *Id.* at 1210. The arguments put forth by Fisher and Sargent-Welch in the present case are similar to the defendant in *Boston Telecommunications*. Here the defendants similarly argue, "in conclusory fashion," and without support that witnesses exist and are located in Indonesia. There was simply no factual basis for the Court to conclude that material witnesses were located in Indonesia.

In *Ravelo Monegro v. Rosa*, the Ninth Circuit found:

> unlike *Piper*, there is no showing that access to proof-
> even aside from Rosa's testimony-would be easier in the
> Dominican Republic. The Giants asserted in their motion
> to dismiss in the district court that 'the costs of bringing
> witnesses to California would be significantly greater
> than litigating the matter in the Dominican Republic,'

> and that 'United States citizens have much easier access
> to the Dominican Republic than Dominican Republic
> citizens have to enter the United States.' **But there is no**
> **evidence to support these assertions**.  Indeed, the only
> evidence before the district court was a declaration
> tending to show the opposite, stating that visas would be
> readily available to plaintiffs."

*Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).  Similarly in this case, there is no evidence to support the assertion that material witnesses are located in Indonesia.  In fact, all evidence in the record supports the inference that there are no coworkers located in Indonesia who possibly might have seen Mr. Herbert working with asbestos.

Recently, in *Neelon*, the Ninth Circuit held that the district court erred in finding the location of witnesses weighed in favor of dismissal because the "Defendants only provided a list of witnesses who resided in either Canada or Mongolia."  *Neelon*, 2014 WL 7336404, *2 (9th Cir. Dec. 26, 2014).  The Ninth Circuit held that even a list with names of witnesses identified as being in other countries "was insufficient to carry Defendants' burden."  *Id.*  As a result, the district court erred in weighing this factor because it "failed to perform the required analysis."  *Id.*  In the present case, neither Fisher nor Sargent-Welch was able to provide any information, not even a list of names, on the witnesses they believed were located in Indonesia.

Even if it could be reasonably inferred that there are coworkers located in Indonesia with knowledge of Mr. Herbert's exposure to asbestos 30 years ago, Defendants have not remotely demonstrated that any witness is unwilling to testify. As the Ninth Circuit held,

> The proponent of a *forum non conveniens* dismissal is not required to identify potentially unavailable witnesses in exact detail. **However, here Occidental has not shown, nor does it even represent, that any witness is unwilling to testify**. Instead it has produced a declaration identifying categories of witnesses it intends to call who are outside of its control.

*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1231 (9th Cir. 2011).

Fisher was asked by the District Court "what witnesses **in particular** have been unwilling to … testify…?" Transcript at 5:16—19. Fisher's only response was "**we don't know** and **we won't know** until the case is in Indonesia who those witnesses are." Transcript at 6:3—4. Thus Fisher admitted that it did not know who any witness was that they claimed was so material to the case. Furthermore, counsel for Fisher stated "it is difficult to assess here because **I can't give you a number of how many witnesses and their names and what particularly they're going to say**. … But I still think it's compelling because **I know they're there**…." Transcript at 21:5—10. Thus Fisher explicitly admitted that it does not know what, if any, witnesses are located in Indonesia, how many are there, or what they are going to testify to. Counsel's bald assertions are merely argument and cannot

be taken as fact, nor can Fisher's counsel assert any facts which demonstrate that witnesses are located there.

As the Ninth Circuit has long held, a defendant who asks "for the extraordinary measure of dismissal on forum non conveniens grounds, need[s] to provide not simply the number of witnesses in each locale, but information sufficient to assist the court in assessing the 'materiality and importance' of each witness." *Boston Telecommunications Group, Inc. v. Wood*, 588 F.3d 1201, 1210 (9th Cir. 2009) (quoting *Lueck*, 236 F.3d at 1146). Defendants failed to provide not only the number of witnesses, but any factual support as to their testimony to enable the District Court to assess their materiality and importance. Defendants could not rely on a wish list of speculated witnesses, located in Indonesia, without any supporting evidence.

### C. The District Court abused its discretion in evaluating the public interest factors.

The public interest factors that the defendants must prove weigh strongly in favor of dismissal are:

    (1)    local interest of lawsuit;
    (2)    the court's familiarity with governing law;
    (3)    burden on local courts and juries;
    (4)    congestion in the court; and
    (5)    the costs of resolving a dispute unrelated to this forum.

*Lueck*, 236 F.3d at 1147.  The District Court failed to accord proper weight to the State of Hawaii's interest in protecting its own residents from harm.

      1.    The District Court erroneously determined that
              Indonesia had a greater interest in this action.

    The District Court found that Indonesia had a greater interest in deciding this matter because the "Defendants' allegedly tortious conduct occurred" in Indonesia and it is where Mr. Herbert was exposed.  (EOR Vol. 1, Tab 2, at 23).  This is not true.  First, Sargent-Welch sold asbestos products to Athens, Greece, and Jakarta and Mr. Herbert was exposed to Sargent-Welch asbestos products in Athens and Jakarta.  Second, under long-standing Hawaii law, "[a] tort is committed where the injury occurs, and the phrase 'tortious act' encompasses the injurious consequences of an act."  *Kailieha v. Hayes*, 56 Haw. 306, 307 (1975).  Mr. Herbert's mesothelioma manifested in Hawaii where he was diagnosed.  (EOR Vol. 2, Tab 12, at ¶ 24).  Third, the tortious act does not merely countenance Mr. Herbert's asbestos exposure in Athens and Jakarta, but also the design, marketing and sale of asbestos products by the defendants in the United States.  Both Fisher and Sargent-Welch are incorporated in the state of Delaware with their principal place of business in Pennsylvania.  Thus all decisions to sell, market, warn about, and remove asbestos-containing products were made within the United States, not Indonesia.  (EOR Vol. 3, Tab 23, at 4).

More importantly, Hawaii is not just a place "Plaintiffs had chosen to relocate" to. Order at 23. Hawaii is and has been Mr. Herbert and his family's home for over ten years. (EOR Vol. 2, Tab 12, at ¶ 18). Since moving to Hawaii in 2003, Mr. Herbert has become a permanent resident of the United States, raised his family and worked at a local Hawaii school. (*Id.* at ¶ 19 -21). Hawaii is also where Mr. Herbert developed and was diagnosed with his fatal cancer. Thus Hawaii would have a greater interest in the welfare of its current resident than Indonesia would have (1) in a controversy between U.S. residents on events that occurred 30 years ago at a private, international school for non-Indonesians, and (2) in a current non-resident who left Indonesia 15 years ago, i.e. a transitory resident of Indonesia. Therefore, at the very least this factor should have been neutral, if not against dismissal. The Court's erroneous finding of material fact is an abuse of discretion.

> 2. The District Court's erroneous determination that Indonesia has a greater interest caused it to also incorrectly evaluate the remaining public interest factors.

The District Court erroneously found that because local interest in this action is low and because there would be language issues, this would pose a significant burden on this Court. (EOR Vol. 1, Tab 2, at 26). This is also not supported by the facts. Indeed, it is against the facts. Defendants submitted a declaration that stated the official language in Indonesia is Bahasa Indonesia. (EOR Vol. 3, Tab

17, at ¶ 23).  Mr. Herbert, however, stated that due to the international nature of the school, all classes at JIS were taught in English.  (EOR Vol. 2, Tab 12, at ¶ 9).  Thus any co-worker that the Defendants claim are located in Indonesia would be able to testify in English since it is the language of instruction at JIS.  Additionally, the catalogs and sales records of U.S. corporations were obviously all in English.

Furthermore, the printout from the JIS website states "Representing twenty nationalities, JIS teachers are drawn from among the best international educators in the world."  (EOR Vol. 2, Tab 13).  It cannot be reasonably inferred from these proffered facts that Mr. Herbert has a coworker with relevant knowledge that could testify only in Bahasa Indonesia.  Moreover, Mr. Herbert, his family, his treating physicians, and expert witnesses all speak English and would testify in English.  As for physical evidence, Mr. Herbert stated that he would personally fill out the purchase order forms and send it to Sargent-Welch and Fisher Scientific in the United States.  Thus the purchase orders and catalogs were in English and should be found at the corporate headquarters of Fisher and Sargent-Welch.

Defendants have not put forth any facts that demonstrate a witness or a document can only be found in Bahasa Indonesia and therefore have not met their burden of proving that the language will be an issue if the case proceeds in Mr. Herbert's home state.  Therefore, the Court abused its discretion by finding that

language would pose a significant burden. Indeed, all the evidence and testimony would be in English.

Moreover, as demonstrated above, Hawaii has a strong interest in this case because Mr. Herbert is a Hawaii resident and had been a Hawaii resident for years and was diagnosed with and treated for mesothelioma in Hawaii. Thus because Hawaii has a strong interest in this matter, even if there is a potential that some evidence could be found in Bahasa Indonesia, it does not outweigh the State of Hawaii's interest in seeing this case decided in Hawaii. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1182 (9th Cir. 2006) ("there will be no cost in resolving a case unrelated to the forum - the case is related to Washington because Tuazon resides there.")

The Court erroneously determined that this case would proceed more expeditiously in Indonesia because "civil cases must be resolved within a period of six months in Indonesia." (EOR Vol. 1, Tab 2, at 26 (citing EOR Vol. 3, Tab 18. ¶ 37)). Harjanto's declaration is ambiguous in that it does not state from when the six month period begins to run. The Court also did not take into consideration the extensive amount of time it would take to not only locate local Indonesian counsel to file this case, but also travel to and from Indonesia to arrange for U.S. based witnesses to fly to Indonesia in its calculations of time. Thus the Court abused its

discretion by determining that the case would proceed more expeditiously in Indonesia.

Based on the facts in the record, it is clear that the District Court applied the standard for forum non conveniens "in a manner **without support in inference that may be drawn from facts in the record**." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011). There are no facts in the record to support the Court's conclusion that this case would pose a significant burden on the Court.

### D. The District Court abused its discretion when it did not afford appropriate deference to Plaintiffs' choice of forum.

The Supreme Court has explicitly held that "a plaintiff's choice of forum is **entitled to greater deference when the plaintiff has chosen the home forum**." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). Judge Watson acknowledged that "[w]hen the plaintiff is a United States citizen or resident, the plaintiff's choice of his home forum should be accorded <u>deference</u>." (EOR Vol. 1, Tab 2, at 9) (emphasis added). Yet, the dismissal ordered herein did not afford the appropriate deference that should be accorded a plaintiff who chooses his home forum. Furthermore, the Supreme Court also held, "a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." *Piper Aircraft*, 454 U.S. at 255 n.3. Both the Ninth Circuit and the Supreme Court have stated that "[i]n the

context of forum non conveniens analysis, a resident alien . . . is entitled to the same deference as a citizen." *Tuazon*, 433 F.3d at 1177, n. 6 (citing *Piper Aircraft*, 454 U.S. at 256, n. 23). Mr. Herbert has been a permanent resident of the State of Hawaii since 2003, and therefore his choice of his home forum was entitled to greater deference than what the District Court afforded him.

The Ninth Circuit has reversed grants of dismissal for forum non conveniens when a District Court does not afford the greater deference owed to a resident plaintiff who chooses his home forum. In *Carijano*, the district court held that because only one plaintiff was from California and the remaining 25 were foreign, that the domestic plaintiff's choice of forum was only entitled to "some deference." *Carijano*, 643 F.3d 1216, 1228 (9th Cir. 2011). This was reversed by the Ninth Circuit who found that "Amazon Watch…was entitled to a strong presumption that its choice of forum was convenient." *Id.* at 1229. Furthermore, that the "district court abused its discretion by recognizing Amazon Watch as a domestic plaintiff but then erroneously affording reduced deference to its chosen forum." *Id.*

Similarly, in reversing the district court's grant of dismissal, the Ninth Circuit in *Neelon* held that "the district court failed to consider the residence of the parties." *Neelon*, 2014 WL 7336404, *1 (9th Cir. Dec. 26, 2014). The Ninth Circuit stated "where the plaintiff is a United States citizen, the defendant must satisfy a **heavy burden of proof**." *Id.* (citing *Boston Telecomms.*, 588 F.3d 1201,

1207 (9th Cir. 2009). As a result, the Ninth Circuit held that "[t]he district court did not weigh Neelon's residency or consider the deference due Neelon's chosen forum." *Id.*

Although Judge Watson stated that he "acknowledges and affords appropriate deference to Plaintiffs' choice of home forum," the ordered dismissal did not give any deference to Plaintiff's choice of his home forum. (EOR Vol. 1, Tab 2, at 31) The District Court found two private interest factors weighed in favor of dismissal, three weighed against dismissal, and two were neutral, yet the District Court found the private interest factors strongly favored dismissal. Had the District Court afforded the proper deference to Mr. Herbert's choice of home forum, the balance of factors clearly would not "strongly favor" dismissal.

### E. The District Court did not strike a reasonable balance of the factors.

The District Court also abused its discretion by not striking a reasonable balance of the factors. "[T]he standard to be applied is whether in light of these factors, defendants have made a 'clear showing of facts which either (1) establish such oppression and vexation of a defendant as to be out of proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Cheng v. Boeing*, 708 F.2d 1406 (9th Cir. 1983). Thus, Fisher and Sargent-Welch had the burden of proving

that the balance of factors **strongly favors** dismissal.  *See Boston Telecomm.*, 588 F.3d at 1212.  The Ninth Circuit has held that it is an abuse of discretion to grant dismissal where the factors are only neutral or weigh slightly in favor of dismissal.

> The private factors based on convenience and evidentiary concerns favor neither side, while the residence of the parties and enforceability of the judgment factors weigh against dismissal.  All of the public interest factors are neutral.  Taken together, the factors fail to 'establish…oppressiveness and vexation to a defendant…out of all proportion to plaintiff's convenience.'  *Piper*, 454 U.S. at 241, 102 S.Ct. 252 (quoting *Koster*, 330 U.S. at 524, 67 S.Ct. 828); *Dole Food*, 303 F.3d at1118 ("The plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country.")  They also fail to outweigh the deference owed to Amazon Watch's chosen forum.  Therefore, the district court abused its discretion by 'striking an unreasonable balance of relevant factors.'  *Ravelo Monegro*, 211 F.3d at 511; *see also Boston Telecomm.*, 588 F.3d at 1212 (reversing a *forum non conveniens* dismissal because the "district court did not hold [the defendant] to his burden" of showing the foreign forum was more convenient where "[a]ll but one of the private and public interest factors were either neutral or weighed against dismissal").

*Carijano*, 643 F.3d at 1234.

In *Boston Telecommunications*, the Ninth Circuit found that "[a]ll but one of the private and public interest factors were either neutral or weighed against dismissal."  *Boston Telecommunications*, 588 F.3d at 1212.  This balance of factors, the Ninth Circuit held, was not enough to apply the doctrine of forum non

conveniens. As a result, the Ninth Circuit reversed the grant of dismissal for forum

non conveniens. *Id.*

Similar, in *Neelon*, the Ninth Circuit held:

> A district court abuses its discretion in the *forum non conveniens* context "when it fails to hold a party to its 'burden of making a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience,' or when it 'fail[s] to consider relevant private and public interest factors and misconstrue[s] others.'" *Carijano*, 643 F.3d at 1236 (citations omitted) (quoting *Boston Telecomms.*, 588 F.3d at 1212; *Gates Learjet*, 743 F.2d at 1337). The district court in this case committed these errors with the result that it applied the "'exceptional tool'" of a *forum non conveniens* dismissal in a case in which the defendants wholly failed to justify such "a drastic exercise of the court's 'inherent power.'" *Id.* at 1224 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002)).

*Neelon*, 2014 WL 7336404, *2 (9th Cir. Dec. 26, 2014).

As stated above, the balance of private interest factors could in no way

strongly favor dismissal. Even if the balance of factors was neutral, this mandates

denial of the motion. As a result, the District Court could not reasonably conclude

that the balance of private and public interest factors **strongly** favored dismissal.

## VIII.  CONCLUSION

The District Court committed an abuse of discretion in determining the

balance of private and public factors strongly favored dismissal. The District

Court's determination that the private factors weighed in favor of removal was

based upon unsubstantiated argument by the Defendants with no actual facts or evidence in support. Additionally, the District Court erroneously determined that Indonesia would have a stronger interest in an action between two U.S. residents than the State of Hawaii. The District Court also failed to accord the proper deference owed to a resident who chooses his home forum. As a result, the District Court failed to strike a reasonable balance of the factors and could not have reasonably concluded that the balance of factors weighed **strongly** in favor of dismissal. Plaintiffs respectfully request that this Court reverse the District Court's grant of dismissal for *forum non conveniens* and remand for further proceedings in accordance with this court's opinion.

s/Alyssa R. Segawa
GARY O. GALIHER
L. RICHARD DeROBERTIS
ALYSSA R. SEGAWA
Attorney for Plaintiffs-Appellants

## STATEMENT OF RELATED CASES

Plaintiffs are not aware of any related cases pending in the Ninth Circuit.


s/Alyssa R. Segawa

GARY O. GALIHER
L. RICHARD DeROBERTIS
ALYSSA R. SEGAWA
Attorneys for Plaintiffs-Appellants

\\Gog\res\WP\06352A01\Pleadings\APPEAL\Opening Brief.docx

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(c),
Federal Rules of Appellate Procedure, and 9th Circuit Rule 32-1
for Case No. 14-15760

I, Alyssa R. Segawa, hereby certify that, pursuant to Rule 32(a)(7)(c) of the

Federal Rules of Appellate Procedure and Ninth Circuit Rule 32-1, the preceding

Appellants' Opening Brief is proportionately spaced, has a typeface of 14 points

and contains 9,040 words, as calculated by the word-processing computer software

program – Microsoft Word – on which the brief was prepared.

Dated, Honolulu, Hawai'i, January 26, 2015.

s/Alyssa R. Segawa
GARY O. GALIHER
L. RICHARD DeROBERTIS
ALYSSA R. SEGAWA
Attorneys for Plaintiffs-Appellants